[No. 25488. Department Two. March 7, 1935.]

GEORGE BAKER, *Respondent*, v. THE DEPARTMENT OF
LABOR AND INDUSTRIES, *Appellant*.[1]

*The Attorney General* and *Browder Brown, Assist-
ant,* for appellant.

*Harry Ellsworth Foster* and *Phil K. Eaton,* for re-
spondent.

STEINERT, J.—This is an appeal from a judgment
of the superior court reversing an order entered by
the joint board of the department of labor and in-
dustries upon a claim made under the workmen's com-
pensation act.

On July 20, 1933, the respondent, a boy eighteen
years of age, filed with the department an accident
report, wherein it was alleged that he had, on that
day, sustained a left inguinal hernia, as a result of
slipping and falling while lifting a chunk of wood. The

[1]Reported in 42 P. (2d) 13.

86.

report, which was upon the usual printed form, gave the name of his employer as Daman & Lyle, of Aberdeen, Washington, but that portion of the report designated for use of the employer was not filled out.

A few days later, the department made a written request of Daman & Lyle for a report by the employer. In response to that request, Mr. Lyle wrote to the department stating that there was no firm of Daman & Lyle, and that the request was undoubtedly intended for J. H. Daman, living at Copalis Crossing.

In response to the same request by the department, Mr. Daman filled out and sent in an employer's report, upon the form supplied. In answer to questions contained therein, he stated that he was a pulp-wood operator located near Copalis Crossing, that the respondent was a cutter, and that the accident had occurred on the employer's premises. In response to the inquiry as to how the accident had occurred, Mr. Daman quoted the respondent in these words: ''Says he was dragging part of a hemlock log out of his way.'' Immediately following this statement, however, was a note to the effect that respondent was not hired by Daman. A few days later, Mr. Daman sent a written memorandum to the department, stating that he had not employed the respondent; that the first knowledge that he had that respondent was on the job was when the accident was reported to him; and that, therefore, he saw no reason for assuming responsibility for the accident.

After making an investigation of the claim, the department rejected it on August 14, 1933, on the ground that there was not sufficient proof of injury occurring during the course of employment. On August 28, 1933, respondent filed a petition for rehearing before the joint board. On the same day, he wrote a letter to the department directing it to send all communica-

tions with reference to the claim to his attorney therein named. The petition for rehearing was granted, and on September 20, 1933, a rehearing was had before an examiner.

At that rehearing, the testimony of the respondent and three witnesses in his behalf was taken, at the conclusion of which a continuance was granted, at the request of respondent, for the purpose of introducing medical testimony. On September 28, 1933, the medical testimony was taken before the same examiner. Shortly thereafter, the department was advised by Mr. Daman that the claim should not be paid, and that he had other evidence to offer. The joint board then, on October 8, 1933, continued the matter for further investigation.

After completing its investigation, the joint board entered an order on November 27, 1933, directing that the respondent be recalled for further testimony. Respondent's attorney was notified by letter of the order. A few days later, the attorney was again notified by letter that the continued rehearing would be had on December 29, 1933. Neither the respondent nor his attorney appeared at the continued rehearing, and the matter was further continued. On March 30, 1934, the attorney wrote to the department complaining of the fact that the case had not yet been decided. In the same letter, he stated that he did not know where the respondent was.

Thereafter, on May 7, 1934, the joint board again scheduled the matter for rehearing, the date being fixed as May 29th. At the same time, a subpoena, directed to respondent to appear at the hearing, was sent to the attorney. The subpoena contained a notation to the effect that, unless respondent appeared, further action on the claim would be suspended. It

may be stated parenthetically that the subpoena, not having been properly served as such, will not now be considered as having any greater effect than a mere notice to the attorney.

Neither the respondent nor his attorney appeared at the rehearing set for May 29, 1934. The joint board then entered an order on June 4, 1934, suspending the claim until such time as respondent should appear and testify. Respondent's attorney was notified of such order, and immediately thereafter took an appeal to the superior court. The record shows that respondent did not appear in person at the hearing before the court.

Based wholly on the certified departmental file, the court made findings to the effect that respondent had sustained an injury in the course of extrahazardous employment, from which the court concluded that the department's order denying compensation should be reversed.

The question here is whether the court had the power and the right to hear and determine the case upon its merits, under the circumstances shown, there having been no final determination by the joint board upon the merits. The answer to that question must depend upon the answer to another question, namely: Did the joint board have the power and the right to suspend the claim, under the particular circumstances narrated?

■ Rem. Rev. Stat., § 7703 [P. C. § 3493], subd. 3, authorizes the director of labor and industries to regulate the proof of accident and the extent thereof. Rem. Rev. Stat., § 7697 [P. C. § 3488], outlines the procedure for the hearing and determination of workmen's compensation claims, before the department and in the courts upon appeal. It provides, among other things, that, if a rehearing before the joint board be

granted, such rehearing shall be had in the county of the applicant's residence, but may be adjourned from time to time and from place to place within the county as the convenience of witnesses may require; that such rehearing shall be *de novo* and summary; that all oral testimony shall be stenographically reported and transcribed and become a part of the record; that the record on rehearing shall be considered by all of the members of the joint board, and their decision communicated to the parties by written notice.

It further provides that each of the members of the joint board shall have power to administer oaths; to preserve and enforce order during the rehearing; to issue subpoenas for, and to compel the attendance and testimony of, witnesses and the production of books, papers, documents and other evidence; to examine witnesses; "and to do all things conformable to law which may be necessary to enable them, or any of them, effectively to discharge the duties of his office."

It is apparent from the language of these statutes that it was intended that the department and its officers should have a latitude of discretion commensurate with the duties enjoined upon them, to the end that all claims should be fully and fairly considered, and that the rights of claimants and at the same time the rights of those who are interested and concerned in the integrity and proper application and disbursement of the accident fund, may be fully protected. We see no reason why the joint board should not, and ample reason why it should, be permitted to call for further testimony when that body deems it material to the particular issues and matters before it. Granted that it must be a reasonable exercise of discretion, it is nevertheless a discretion that may be exercised to the extent that it is not abused.

So far from any abuse being apparent in this instance, we think that the joint board did just what it should have done. It gave the respondent every opportunity to present himself at a rehearing, but he failed to do so. Even then, the board did not reject the claim, but merely suspended it until respondent should submit himself to further examination as a witness. He may still prosecute his claim, and if he is unsuccessful before the department, all his legal rights will be preserved. More than that he cannot, and should not be allowed to, ask. We hold, then, that the joint board had the power, and under the particular circumstances and occasion had the right, to enter its order of suspension.

With that question determined, the answer to the other question follows as a matter of settled decision. Since the joint board had not decided the case on its merits, the court had no power to do so. In *Taylor v. Department of Labor and Industries,* 175 Wash. 1, 26 P. (2d) 391, we said:

"While the full record has been presented, the courts are not at liberty to consider the same upon the merits, because to do so would contravene the express policy of the law, which requires, first, a decision on the merits by the joint board of the department."

Respondent cites and relies upon *Beels v. Department of Labor and Industries,* 178 Wash. 301, 34 P. (2d) 917, and *Noll v. Department of Labor and Industries,* 179 Wash. 213, 36 P. (2d) 809. In each of those cases, however, the joint board had rendered a decision upon the vital issues presented by the claim. In the *Noll* case, the court referred with approval to the *Taylor* case, and quoted therefrom the very language that we have quoted above. The distinction between this case and those is a distinction in point of fact. In this case, there has never been a deci-

sion upon the fundamental issue to be determined; in those there had been. In legal principle, those cases and this rest upon the same footing.

The judgment is reversed, with direction to affirm the order of suspension.

MILLARD, C. J., HOLCOMB, BEALS, and BLAKE, JJ., concur.